BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DAVID G. ROBINS, IDAHO STATE BAR NO. 8494
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JERALD DONALD REUTZEL,<br><br>Defendant. | Case No. CR-21-043-DCN<br><br>**OBJECTION TO GENERAL ORDER 389** |

The United States of America, by and through Bart M. Davis, United States Attorney,

and the undersigned Assistant United States Attorney for the District of Idaho, hereby files this

OBJECTION TO GENERAL ORDER 389.

### SUMMARY

The United States objects to and requests reconsideration of the Court's General Order

389, entered in this case on February 18, 2021, pursuant to Federal Rule of Criminal Procedure

5(f).  The Government has no objection whatsoever to Rule 5(f)'s requirement that the Court

confirm the important disclosure obligations of the Government under existing law.  The

Government's objection stems from the fact that the General Order does not do that.  Instead, it

imposes new discovery obligations on the Government that far exceed settled disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  For the first time, it requires the Government to produce all relevant information—whether or not favorable to the defense and whether or not material.  If allowed to stand, the Order will throw into disarray longstanding, carefully balanced rules of criminal discovery and cause substantial trouble for the Government and the Court.

Accordingly, the United States requests that the Court replace General Order 389 and the Order entered in this case with one that satisfies Rule 5(f)—i.e., one that confirms the Government's discovery obligations under the law.  The Court could adopt the proposed language at the end of this motion, or simply alter the disjunctive language of General Order 389 to make it clear that the Government's obligation is to turn over information that is both favorable to the Defendant *and* material to guilt or punishment.

## INTRODUCTION

Recently enacted in the Due Process Protections Act of 2020, Rule 5(f) of the Federal Rules of Criminal Procedure requires the judge presiding at an initial appearance in a criminal proceeding to "issue an oral and written order . . . that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny."  Fed. R. Crim. P. 5(f).  The Ninth Circuit provided a model order that, unfortunately, does not satisfy Rule 5(f)'s new provision.  Instead, its language requires the Government to provide discovery of "all information or evidence . . . that is . . . *relevant* to the defendant's guilt or punishment," a standard far broader than that required by *Brady* and progeny, as discussed below.[1]  Luckily, like

---

[1]     The United States is aware that, in a two-page memorandum dated December 4, 2020, the Ninth Circuit Jury Instructions Committee proposed the language of the Order to the Ninth Circuit Judicial Council.  It appears that the proposed language was submitted without any accompanying legal analysis.

OBJECTION TO GENERAL ORDER 389 - 2

model jury instructions, the model order "is not blessed with any special precedential or binding authority." *United States v. Haischer*, 780 F.3d 1277, 1284 n.1 (9th Cir. 2015) (quoting *McDowell v. Calderon*, 130 F.3d 833, 840 (9th Cir. 1997) (en banc)) (rejecting district court's interpretation of the legal requirements for a duress defense, even though arguably implied by a comment to the Ninth Circuit's Model Instruction). It is a suggestion or a guide from the Jury Instructions Committee and the Judicial Council. Indeed, Rule 5(f)(2) specifically confirms the district court's discretion in determining whether and how to use the model. *See* Fed. R. Crim. P. 5(f)(2) (providing that a district court "may" use a model order as it "determines [] appropriate"). Thus, this Court can choose to use, to modify, or to disregard the language.

This Court initially adopted General Order 377, which more accurately described the Government's legal obligations. It then superseded that order with General Order 389, the model order from the Ninth Circuit's Judicial Council. And it applied that General Order in this case.

The United States takes very seriously its *Brady* obligations, erring broadly on the side of disclosure, and has no issue with a general order that confirms the United States' obligations under the law, just as Rule 5(f) requires. The Government requests that this Court issue a modified order that confirms the Government's *Brady* obligations, as the plain language of Rule 5(f) requires, and that does not purport to create new obligations.[2]

## LEGAL BACKGROUND

### *Brady* and Its Progeny

For more than 50 years, *Brady* has required the Government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87. This duty applies to both material exculpatory and impeachment evidence. *See id.*;

---

[2]    Identical orders have been entered in several other recent cases. The first case in which the Government filed this objection was *United States v. Brian Harris*, 1:21-cr-00024-BLW.

*Giglio v. United States*, 405 U.S. 150, 154 (1972).  Evidence is "material" when there is "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  Undisclosed evidence is material only if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).  The Supreme Court has "never held that the Constitution demands an open file policy."  *Id.* at 437.

The United States is aware of the scope of its *Brady* obligations, and as a matter of Executive Branch discretion urges prosecutors to disclose exculpatory and impeachment information "beyond that which is constitutionally and legally required."  Justice Manual, § 9-5.001.  The Department requires regular training of federal prosecutors regarding *Brady/Giglio* and general disclosure obligations and policies.  *See id.*  The Department also has extensive policies to ensure federal prosecutors fully satisfy all their criminal discovery obligations, including under *Brady*.  *See, e.g.*, Justice Manual, §§ 9-5.001 – 9-5.100.

<u>The Due Process Protections Act</u>

On October 21, 2020, the President signed into law the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020).  The legislation added new Rule 5(f) to the Federal Rules of Criminal Procedure.  Rule 5(f) provides:

> **(f) Reminder of prosecutorial obligation.**—
>
> > **(1) In general.**—In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law.
>
> > **(2) Formation of order.**—Each judicial council in which a district court is located shall promulgate a model order for the

> purpose of paragraph (1) that the court may use as it determines is
> appropriate.

Fed. R. Crim. P. 5(f).  The purpose of the rule—simply to remind the parties of the

Government's established *Brady* obligations—is specified in the statutory heading for Rule 5(f):

"Reminder of prosecutorial obligation."  Fed. R. Crim. P. 5(f).  In keeping with that purpose,

nothing in Rule 5(f)(1) purports to expand or modify, or to authorize the Court to expand or

modify, the Government's preexisting disclosure obligations.  Rather, Rule 5(f)(1) requires an

order that "confirms" the Government's *Brady* obligations under established case law.  The order

must also "confirm[]" the possible consequences for violating those disclosure obligations

"under applicable law."  *Id.*

Rule 5(f)(2) firmly places discretion in the district court regarding whether and how to

use the model order promulgated by a circuit's judicial counsel.  The Rule uses the permissive,

noting that the court "*may* use" the model order "as it determines is appropriate."  Fed. R. Crim.

P. 5(f)(2).  Given that the model order adopted by the Ninth Circuit Judicial Council is contrary

to law and will cause real, practical problems if adopted, this Court should exercise its discretion

to reject or to modify that order.

## ARGUMENT

The Court's General Order 389 should be vacated and replaced in this case and in all

others.  It does not satisfy the plain language of Rule 5(f) and is therefore contrary to law.  In

addition, it will upend the criminal discovery regime, throwing settled discovery rules into

disarray and causing significant practical problems.  Each reason will be examined in turn.

**I.      General Order 389 is contrary to the plain language of the newly adopted Rule
5(f).**

OBJECTION TO GENERAL ORDER 389 - 5

By definition, an order that "*confirms* the disclosure obligation of the prosecutor under *Brady* . . . and its progeny" must refrain from misstating the law of *Brady*.  Fed. R. Crim. P. 5(f) (emphasis added).  General Order 389, however, incorrectly states the law under *Brady* in at least two key respects.

First, the Order's disclosure command is not limited to evidence that is "favorable" to the defense.  *Brady*, 373 U.S. at 87.  Instead, the Order broadly compels the Government to produce "*all* information or evidence . . . that is . . . *relevant* to the defendant's guilt or punishment." Gen. Ord. 389 (emphases added).  Relevant evidence includes evidence that would tend to establish or negate an offense element.  Fed. R. Evid. 401(a).  Thus, this language encompasses inculpatory, just as much as exculpatory, evidence.  The Order therefore badly misstates the law. "*Brady* does not require the Government to disclose inculpatory evidence."  *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996); *see also United States v. Zuno-Arce*, 44 F.3d 1420, 1426 (9th Cir. 1995) ("The district judge did not err in ruling that this 1991 DEA interview did not amount to exculpatory evidence, so could give rise to no *Brady* violation."); *United States v. Neal*, 611 F.3d 399, 401 (7th Cir. 2010) (*Brady* "requires the disclosure of exculpatory evidence, not inculpatory evidence"); *United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989) ("the [*Brady*] rule applies only to impeachment and exculpatory evidence; neutral or inculpatory evidence lies outside its coverage").

Second, the Order's disclosure command is not limited to favorable evidence that is "*material* either to guilt or to punishment," as *Brady* requires.  *Brady*, 373 U.S. at 87 (emphasis added).  Evidence is "material" under *Brady* if there is a reasonable probability that its disclosure would have changed the outcome of the proceeding.  *See Cone*, 556 U.S. at 469-70.  The Order, in contrast, applies to all "relevant" information or evidence.  Gen. Ord. 389.

"Relevance" is a much broader concept than materiality.[3]  Under the evidence rules, "[e]vidence is relevant if:  (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added).  Given the breadth of this definition, all "relevant" information or evidence is exceedingly broad.

While all information "relevant" to guilt is already overbroad, all information "relevant" to *punishment* is almost limitless in scope.  *See* Gen. Ord. 389 (requiring disclosure of "all information or evidence … that is … relevant to … *punishment*") (emphasis added).  That is so because "[b]y statute, there is '[n]o limitation . . . on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'"  *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013) (quoting 18 U.S.C. § 3661).  As the Supreme Court has explained, "a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."  *Nichols v. United States*, 511 U.S. 738, 747 (1994) (internal quotation marks omitted).  By requiring disclosure of discovery similarly broad in scope, the order places dramatic new obligations on the Government.

None of these problems should arise under a proper Rule 5(f) order.  This is because nothing in Rule 5(f) permits a magistrate court to order broad disclosure of all "relevant" information and evidence, or to enlarge the Government's preexisting *Brady* disclosure obligations in any way.  Rather, in enacting Rule 5(f), the Due Process Protections Act performed a much narrower function: requiring federal courts to "remind" the Government of its

---

[3]      For this reason, the Government urges the Court to consider the language proposed at the end of this brief. Alternatively, the Court could revert to its previous General Order 377, but change "relevant" to "material."

*Brady* obligation by issuing an order that "confirms the disclosure obligation of the prosecutor under *Brady* . . . and its progeny." Fed. R. Crim. P. 5(f).[4]  Issuing a Rule 5(f) order that goes beyond "confirming" *Brady*'s established disclosure rule violates both Rule 5(f) and *Brady* itself. As the Supreme Court has explained:  "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Accordingly, this Court should vacate General Order 389 because it is contrary to law.

## II.    The breadth of the new discovery obligations imposed by the Order will throw settled discovery rules into disarray, causing substantial practical problems.

As written, the Order's sweeping command to disclose all "relevant" information would abrogate longstanding rules of criminal discovery.  Three categories of rules are most obviously affected:  those that create affirmative obligations in the Government, those that protect certain kinds of discovery even though relevant, and those that create obligations in the defense.

In the first category, statutory and procedural rules require the Government to provide discovery, but they limit the requirement to specific categories of relevant materials.  For example, the Jencks Act requires production of a specific subset of relevant information: written and recorded statements of witnesses who testify for the Government.  18 U.S.C. § 3500; *see also* Fed. R. Crim. P. 26.2.  And Rule 16 provides additional specific categories of relevant items that the Government must disclose on request.  Fed. R. Crim. P. 16.  By requiring the Government to disclose everything that is "relevant," however, the Order renders superfluous these carefully tailored disclosure rules.  *See Degen v. United States*, 517 U.S. 820, 825 (1996) (explaining that under the federal criminal discovery rules "[a] criminal defendant is entitled to rather limited discovery"); *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981) (holding that

---

[4]      *Brady* also does not require the Government to tell the defense things that it already knows.  *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006).

the district court "exceeded its authority by ordering [pretrial] production of [Jencks Act] statements over the Government's objection").  The rules' requirements will be substantially exceeded if the Government's discovery obligations are as broad as the order purports to make them.

A second set of criminal discovery rules specifically provide that the Government shall *not* be required to disclose certain items despite their relevance.  For example, the work product doctrine protects both sides in a criminal case.  *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital.").  Rule 16 further protects investigative materials in an additional way:  under the heading "Information Not Subject to Disclosure," Rule 16(a)(2) generally protects against disclosure "reports, memoranda, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case," except as specifically provided elsewhere in Rule 16.  *See also United States v. Fort*, 472 F.3d 1106, 1107 (9th Cir. 2007) (holding that relevant police reports were protected from disclosure by Rule 16(a)(2)).  Similarly, the Jencks Act protects statements from disclosure except as provided by the statute.  *See* 18 U.S.C. § 3500(a).[5]

There are good reasons for the protection of such information notwithstanding its relevance at trial time.  For many prospective Government witnesses, "[p]rotection of their statements is necessary to protect the witnesses from threats, bribery, and perjury."  *Mills*, 641 F.2d at 790.  Indeed, the policy for protecting witness statements is so strong that, if the

---

[5]     "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).

Case 1:21-cr-00043-DCN   Document 30   Filed 02/19/21   Page 10 of 14


Government elects not to call a person as a witness and thus his statements are not subject to disclosure under the Jencks Act, it is error warranting mandamus relief for a court to order their disclosure. *See id.* For similar reasons, to protect the safety of Government informants, the Government generally is not required to disclose the identity of a confidential informant—even where that information is "relevant" to the defense. *See United States v. Ramirez-Rangel*, 103 F.3d 1501, 1505 (9th Cir. 1997) (citing *Roviaro v. United States*, 353 U.S. 53 (1957)), *abrogated on other grounds by Watson v. United States*, 552 U.S. 74 (2007). And in cases with a national security dimension, additional layers of protection against disclosure may apply under the Classified Information Procedures Act, 18 U.S.C. App. § 1 *et seq.*, and the Foreign Intelligence Surveillance Act ("FISA"), *see* 50 U.S.C. § 1806(f); *see also United States v. Daoud*, 755 F.3d 479, 481 (7th Cir. 2014) (noting that "no court has ever allowed disclosure of FISA materials to the defense" (internal quotation marks omitted)). These are merely the problems the Government can foresee. Others are likely to be discovered if the order stands.

　　　　Much of the information and evidence protected from disclosure by these and other rules is, of course, *relevant* to guilt or punishment. Nevertheless, it is protected by law against disclosure for other sound reasons. By requiring disclosure of "all information or evidence . . . that is . . . relevant," however, the Order runs roughshod over these carefully tailored rules, requiring the provision of all "relevant" information and abrogating the carefully-structured federal system that—importantly—allows for the protection of certain sensitive, albeit "relevant," information from disclosure in a criminal case. (ECF No. 7.)

　　　　Finally, in the third category, we have another aspect of Rule 16: reciprocal discovery. As already discussed, Rule 16 requires certain categories of discovery from the Government "[u]pon a defendant's request." Fed. R. Crim. P. 16(a)(1)(A)-(F); *accord* Fed. R. Crim. P.

16(a)(1)(G) ("[a]t the defendant's request").  But a defense request does not merely trigger

requirements for the Government.  Once honored, the fact of the defense request triggers

reciprocal obligations in the defense.  *See* Fed. R. Crim. P. 16(b)(1)(A) (documents and objects

the defendant intends to introduce in the defense case-in-chief), 16(b)(1)(B) (reports of physical

or mental examinations and scientific tests), and 16(b)(1)(C) (expert witness disclosures).  The

advisory committee notes to the Rule, and in particular the notes regarding the defense's

obligations under subsection (b) in the 1974 amendments, reflect the care and judiciousness with

which rulemakers created the trigger for the reciprocal obligation.  They sought to balance a

defendant's rights and privileges with the well-studied advantages of requiring discovery from

both sides.  *See* Fed. R. Crim. P. 16(b) advisory committee's note to 1974 amendment.  They

ultimately chose to allow the defense to determine whether certain discovery obligations would

adhere to them, by requiring a defense request (and the Government's fulfillment of that request)

to trigger certain obligations.  *See id.*  In other words, it is up to a defendant whether to make the

request that will trigger a defense duty to produce certain evidence.

The Order, by mandating that the Government disclose all "relevant" information even

without a defense request, eliminates the mechanism that triggers the Government's rights under

Rule 16 to reciprocal discovery:  a defense request.  There is no need for the defense to request

discovery when the Court's order requires it of the Government at the outset.  There is also no

reason for the defense to agree to reciprocal discovery.  By doing away with the carefully-

designed mechanism chosen by the Rules Committee, then, the Order appears to do away with

reciprocal discovery altogether.  That, of course, is impermissible.  A court's inherent power,

whatever its scope, "does not include the power to develop rules that circumvent or conflict with

the Federal Rules of Criminal Procedure." *United States v. W.R. Grace*, 526 F.3d 499, 511 (9th

Cir. 2008) (en banc) (quoting *Carlisle v. United States*, 517 U.S. 416, 426 (1996)).  Stripping the

Government of its rights to reciprocal defense discovery undoubtedly "conflict[s] with" Rule 16.

But a court that attempts to remedy the new problem created by the order by further order—this

time by ordering disclosure by the defense—will do so at is peril, treading precisely where the

Rules Committee decided not to.  Such an order would take the decision whether to trigger such

reciprocal obligations out of the defense's hands, creating potential constitutional concerns.  For

this (and many other) reasons, a far better option is simply to correct General Order 389.

### III.    The Court is free to replace General Order 389 with one that satisfies Rule 5(f).

This Court is vested with the discretion to determine whether and when to adopt language

suggested by a circuit's jury instruction committees, judicial counsels, or other sources that may

provide drafting aids.  *See, e.g.*, *Haischer*, 780 F.3d at 1284 n.1  (quoting *McDowell*, 130 F.3d at

840) (rejecting district court's interpretation of the legal requirements for a duress defense, even

though arguably implied by a comment to the Ninth Circuit's Model Instruction).  The Due

Process Protections Act language of Rule 5(f)(2) specifically confirms this discretion.  *See* Fed.

R. Crim. P. 5(f)(2) (providing that a district court "may" use a model order as it "determines []

appropriate").  Thus, this Court can choose to use, to modify, or to disregard the language of the

model order.  In the end, this Court is responsible for the language it adopts.

The Court should replace the Order in this case and in all others with one that tracks the

language and fulfills the purpose of Rule 5(f):  to confirm the Government's obligations under

the law.[6]  The case law under *Brady* and progeny is well established and federal prosecutors

agree to the importance of satisfying the Government's *Brady* obligations.

---

[6]        The Court could, of course, attempt to modify its order to reinstate certain rules' protections.
Indeed, it will have to attempt to do so if the Order stands.  The Government does not advise this course for several
reasons, however.  The complex web of rules, statutes, and caselaw described above is built on a fundamentally
different premise than is the Order.  It is the premise that, as the Supreme Court has explained:  "There is no general

The Government respectfully recommends the following language:

> Pursuant to Rule 5(f), the court confirms the prosecutor's duty to disclose material evidence that is favorable to the defendant as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. If the court finds that the Government has failed to comply with this obligation, the court may, as appropriate, order the production of such information, grant a continuance, impose evidentiary and other appropriate sanctions, order a new trial, or dismiss charges.

## CONCLUSION

The Government objects to General Order 389 and its adoption in this case and requests the rescission and replacement of these orders with one that complies with Rule 5(f).

Respectfully submitted this 19th day of February, 2021

BART M. DAVIS
UNITED STATES ATTORNEY
By:

*/s/ David G. Robins*

DAVID G. ROBINS
Assistant United States Attorney

---

constitutional right to discovery in a criminal case." *Weatherford*, 429 U.S. at 559. Adopting an opposite premise, as the General Order purports to do, and then attempting to re-create the protections of the existing system, built on an opposite premise, would require substantial re-drafting. And such a fundamental re-configuration is not mandated by the plain language of Rule 5(f). That rule merely commands the court to "confirm" the existing regime and the obligations it places on the Government. *See* Fed. R. Crim. P. 5(f). A dramatic re-ordering is also not required by the Judicial Council's adoption of the flawed model order, which this Court is free to use—or not to use—as it deems appropriate. It is merely a drafting aid.

OBJECTION TO GENERAL ORDER 389 - 13

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2021, the foregoing **OBJECTION TO GENERAL ORDER 389** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Dennis Benjamin<br>Nevin, Benjamin & McKay, LLP<br>PO Box 2772<br>Boise, ID 83701 | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

*/s/ Laura Rodriguez*
Legal Assistant

OBJECTION TO GENERAL ORDER 389 - 14